IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| ST. LUKE'S MAGIC VALLEY REGIONAL MEDICAL CENTER (formerly MAGIC VALLEY REGIONAL MEDICAL CENTER, <br><br> Plaintiff, <br><br> vs. <br><br> THOMAS R. LUCIANI, STAMPER, RUBENS, STOCKER & SMITH, P.S. <br><br> Defendants. | Case No. CV08-30-S-EJL <br><br> MEMORANDUM DECISION AND ORDER |

Pending before the Court in the above-entitled matter are Defendants' Motion for Summary Judgment (Dkt. 53) and Motion to Strike (Dkt. 70). The Court previously certified a question to the Idaho Supreme Court. That question has now been answered and the parties have filed supplemental briefing regarding the impact of the Idaho Supreme Court's opinion in *St. Luke's Magic Valley Regional Medical Center v. Luciani*, 293 P. 3d 661 (Idaho 2013).

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

**FACTUAL BACKGROUND**

Defendants Thomas Luciani and his law firm Stamper, Rubens, Stocker & Smith, P.S. (collectively referred to as "Luciani" or "Defendants") represented Magic Valley Regional Medical Center ("Magic Valley") to defend a wrongful termination and False Claims Act

action alleging fraudulent Medicare billing by Magic Valley ("the Suter litigation").[1] In late December 2005, an issue arose in the Suter litigation regarding the need for a defense expert and the limited time to disclose Magic Valley's expert.

In the Suter litigation plaintiff's expert disclosure was due December 16, 2015 and Magic Valley's expert disclosure was due by February 3, 2006. On or about December 22, 2005, plaintiff's expert in the Suter litigation, Ronald Nicholson, opined the liability for false billings by Magic Valley was approximately $18 million based on his audit. Luciani notified Magic Valley's general counsel of the Nicholson report by phone on January 3, 2006. Magic Valley claims this was the first indication it had the exposure to liability was so large and that as of this notification Luciani had not yet retained an expert to respond to the report with an expert disclosure deadline looming.

In response to this expert's disclosure, Magic Valley determined a crisis or emergency existed and it would hire another law firm with expertise in false claims act claims to find an expert to respond to plaintiff's expert's report in the Suter litigation. Magic Valley began to investigate substitute counsel in mid-January of 2006. An expert, Georgeann Edford of Coding Compliance Solutions ("Edford"), was contacted by January 18, 2006 (apparently by Magic Valley's general counsel's law partner, Anne Pitts. At the time Magic Valley contacted the Edford, Magic Valley was aware Luciani obtained a thirty (30) day extension for the production of the defense expert report until March 6, 2006. It is undisputed that Magic Valley timely filed its required expert disclosures. Magic Valley's expert in the Suter litigation was able to establish errors in the opposition's expert report calculations and credibility questions regarding the plaintiff's expert curriculum vitae.

On or about March 10, 2006, Patricia Olsson replaced Luciani as counsel on the wrongful termination claim and Luciani was terminated as counsel for Magic Valley on the False Claims Act claim and replaced by the law firm McDermott, Will & Emory, LLC

---

[1] The Court acknowledges Luciani was not the first attorney to represent Magic Valley in the Suter litigation. Magic Valley requested its insurance company, Truck Insurance Exchange ("Truck"), change counsel in 2003 to an attorney with "aggressive trial experience." Truck agreed to this request an Luciani was substituted in as counsel for Magic Valley with Magic Valley's consent.

("McDermott") on or about March 14, 2006. So as of March 15, 2006, Luciani was no longer the attorney representing Magic Valley in the Suter litigation.

Mediation in the Suter litigation continued for approximately four more years. The Suter litigation did not go to trial and was settled in May of 2010 for $4.25 million. It is unclear what portion of the Suter settlement was related to the wrongful termination claims and what portion of the settlement was related to the False Claims Act claims. Magic Valley/St. Luke's alleges it paid approximately $12 million in attorneys fees to McDermott and expert fees to defend the Suter litigation. St. Luke's was able to recover $842,925 in sanctions against plaintiffs in the Suter litigation.

St. Luke's brought an action against Truck for failing to defend the Suter litigation under the duty to defend clause of their policy. The Truck duty to defend action was settled against Travelers Insurance and Truck for a total recovery of $8,250,000. St. Luke's argues the cost to litigate the duty to defend action was $2.7 million in outside attorneys fees. Therefore, St. Luke's seeks damages in this case of over $9.8 million without factoring in any prejudgment interest.[2]

Prior to July 1, 2006, Magic Valley was owned by Twin Falls County. Twin Falls County (on behalf of itself and Magic Valley), Twin Falls Health Initiatives Trust, LTD, St. Luke's Health System, LTD, St. Luke's Regional Medical Center, LTD, and St. Luke's Magic Valley Regional Medical Center entered into a Sale and Lease Agreement for the Creation of a New Health System ("Sale and Lease Agreement") in March 2006.[3] The Sale and Lease Agreement provided for the transfer or sale of the assets and liabilities associated with the operation of Magic Valley. The transaction closed on July 1, 2006.

---

[2] $4.25 million Suter settlement less sanctions recovered of $842,925 = $3,407,075. plus the cost of outside counsel not recovered in the duty to defend action against Truck of $3,750,000 (which is $12 million less $8,250,000 paid by insurance companies) = $7,157,075 plus the out of pocket cost paid by St. Luke's for attorneys' fees to recover in the duty to defend action against Truck of $2.7 million = $9,857,075.

[3] The exact date the Sale and Lease Agreement was signed in March could not be determined by the Court as the referenced exhibit of the Sale and Lease Agreement does not have the specific date of execution filled in. *See* Exhibit 7 to Declaration of Christopher W. Tompkins in support of Defendant's Motion for Summary Judgment, Dkt. 54-4. The Court notes that Defendants allege on or about March 16, 2006 was date the Sale and Lease Agreement was signed.

ORDER - Page 3
13ORDERS\ST.LUKES_SJ.WPD

It is undisputed that pursuant to Article III of the Sale and Lease Agreement, St. Luke's assumed Twin Falls County's potential liability in the Suter litigation and proceeded to have McDermott defend the False Claims Act claim. The estimated $18 million exposure in the Suter litigation appears to have been known by Magic Valley and St. Luke's via their due diligence investigation prior to the Sale and Lease Agreement being executed.

Article II of the Sale and Lease Agreement set forth the type of assets to be leased, sold or transferred to St. Luke's Magic Valley Regional Medical Center ("St. Luke's" who is the plaintiff in the current litigation) and any assets excluded from agreement. Section 2.5 sets forth the "Other Property" included in the sale:

> [I]t is the intent of the Parties that all property and interests of the Hospital whether real or personal, tangible or intangible, be leased, sold, assigned, licensed or transferred by [the] County and the [Magic Valley] Subsidiaries . . .to [St. Luke's] (including any rights of first refusal, options or claims against third parties by the Hospital and settlements received thereto), whether or not reflected on the Hospital's Balance Sheet and whether known or unknown, contingent or otherwise.

Dkt. 54-4, Sale and Lease Agreement, Exhibit 7, p. 6. It is Section 2.5 St. Luke's relies on for a general assignment of all claims against third parties, including any legal malpractice claims, that Magic Valley may have had whether known or unknown at the time of the Sale and Lease Agreement.

There was no specific assignment of a legal malpractice claim against Luciani contained in the Sale and Lease Agreement. As a result of its due diligence investigation into the Sale and Lease Agreement, it is undisputed that St. Luke's was aware of the Suter litigation and the potential financial liability associated with the litigation as well as the decision to hire McDermott and terminate Luciani's representation.

After the Sale and Lease Agreement was closed on July 1, 2006, Magic Valley ceased to exist and the operation and management of the regional medical center was taken over by St. Luke's. The Magic Valley management team became the St. Luke's management team with some minor modifications. Magic Valley did not merge with St. Luke's. Instead the Sale and Lease Agreement was effectively an asset and liability transfer from Magic Valley to St. Luke's.

It should also be noted that on or about June 30, 2006, Magic Valley, St. Luke's and McDermott did enter into an Assignment and Assumption Agreement which contains a specific and explicit assignment and assumption of rights and responsibilities relating to the legal representation being provided by McDermott.

In January 2008, St. Luke's sued the Defendants for legal malpractice claiming a breach of the duty of care and loyalty by Luciani. As discussed above, St. Luke's seeks approximately $10 million in damages for the alleged legal malpractice by Luciani. St. Luke's motion to amend to add punitive damages has been denied without prejudice. Dkt. 122. Defendants motion for summary judgment raises multiple legal defenses regarding St. Luke's standing to bring this action: legal malpractice claims are not assignable, no attorney-client relationship existed between Defendants and St. Luke's, no valid assignment took place, and damages are limited to those damages that were actually incurred by Magic Valley prior to the assignment (which would be no damages).  Defendants also argue that the claims are barred by the statute of limitations, St. Luke's cannot establish that Defendants proximately caused St. Luke's alleged damages; St. Luke's claims are barred by judicial estoppel and St. Luke's attorneys fees and costs are not recoverable. St. Luke's argues the Idaho Supreme Court resolved the following issues: legal malpractice claims are assignable, a valid assignment took place, damages are not limited to any damages that were incurred by Magic Valley prior to the assignment.  St. Luke's argues the other grounds for summary judgment should also be rejected by the Court.

**MOTION TO STRIKE**

In Defendants' motion to strike, the Defendants argue the Court should only consider admissible evidence in evaluating the motion for summary judgment.  Defendants make numerous attacks on the evidence submitted by St. Luke's.   The Court has reviewed the issues raised and finds in most cases the evidence complained of can be considered by the Court at this stage in the litigation. Exceptions are hearsay and Mr. Hayman's opinion regarding whether or not the Suter litigation could have been settled earlier at a more

advantageous amount to St. Luke's but for Luciani's alleged negligence. Mr. Hayman's has not been identified as an expert and his opinions regarding the Suter litigation are speculative based on his view of the case as the lead attorney for St. Luke's. St. Luke's argues it only offered Hayman's opinions in response to Defendants attempt to use the mediator's hearsay statement to Mr. Luciani that the case could have been settled for a $4 million in March of 2006. The settlement conference negotiations are confidential and any statement by the mediator to Mr. Luciani is hearsay and will not be considered by the Court for purposes of the motion for summary judgment. The remainder of the disputes regarding evidence and admissibility are not determinative of the motion for summary judgment and will have to be dealt with in the normal course of objections during trial.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id*. at 248.

The moving party is entitled to summary judgment if that party shows that each issue of material fact is not or cannot be disputed. To show the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited

do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

## ANALYSIS

"There are four elements to a legal malpractice claim: (1) there is an attorney-client relationship between the plaintiff and the defendant; (2) the defendant lawyer owed a duty of care to the plaintiff; (3) the lawyer breached the duty; and (4) the lawyer's negligence was a proximate cause of the client's damage." *Soignier v. Fletcher*, 256 P.3d 730, 732 (Idaho 2011).

Defendants make a number of arguments in their motion for summary judgment that all of the elements cannot be satisfied by St. Luke's and any alleged damages were not proximately caused by the alleged malpractice of Luciani. The Court will address each argument.

1. The Legal Malpractice Claim in this Case is Assignable.

Defendants argue legal malpractice claims are not assignable in Idaho and the case must be dismissed. Having certified the question to the Idaho Supreme Court, this Court finds that under the facts of this particular case, Magic Valley's malpractice claim was assignable to St. Luke's.

> Based on the rationale set out by this Court in *Macleod* and upon I.D. § 55-402, we hold that where a legal malpractice claims is transferred to an assignee in a commercial transaction, along with other business assets and liabilities, such a claim is assignable.

*St. Luke's Magic Valley Regional Medical Center v. Luciani*, 293 P. 3d 661, 668 (Idaho 2013).

2. The Assignment of the Legal Malpractice Claim was Valid in this Case

Defendants next argue the assignment in this case was not valid as there was no attorney-client relationship between St. Luke's and Defendants. This argument was rejected by the Idaho Supreme Court which held that in buying the operations of the hospital, St. Luke's stepped into the shoes of Magic Valley. *Id.* Therefore, St. Luke's did not have to have an independent attorney-client relationship with Luciani in order to bring this claim that arises out of Luciani's representation of Magic Valley.

To the extent Defendants are arguing the assignment was not allowed as it was not expressly assigned in the Sale and Lease Agreement, this argument is rejected. As discussed in the Factual Background, there was not specific language assigning a potential malpractice claim against Defendants. Instead, there was a general assignments clause in the Sale and Lease Agreement. This issue was indirectly addressed by the Idaho Supreme Court when

they determined that the assignment in this case was valid. First, the Idaho Supreme Court recognized "choses in action are generally assignable." *Id.* at 665 (citing *Purco Fleet Servs., Inc. v. Idaho State Dep't of Fin.*, 90 P.3d 346, 351 (2004). Second, the Idaho Supreme Court found that since St. Luke's assumed the obligations under the Suter litigation it should also have the rights attendant to that assumption that would include the right to seek redress for any malpractice losses that may have impacted the value of the hospital it received under the Sale and Lease Agreement. *Id.* at 668. Moreover, the Idaho Supreme Court ruled there was no public policy reason to believe assigning the claim under the facts of this case would undermine attorney-client relationships or be against public policy. *St. Luke's Magic Valley Regional Medical Center v. Luciani*, 293 P. 3d 661, 669 (Idaho 2013).

Because St. Luke's was purchasing almost all the assets and liabilities of Magic Valley, the general assignments language included in Section 2.5 was sufficiently broad to preserve any legal malpractice claim. Agreements assigning malpractice claims need not specifically identify the malpractice claim as long as the overall terms of the agreement are broad enough to include such a claim. "[L]egal malpractice claims, transferred along with other assets and obligations to an assignee in a commercial transaction, are assignable. . . ." *Cerberus Partners, L.P. v. Gadsby & Hannah*, 728 A. 2d 1057, 1061 (R.I. 1999). The Court finds in this case the broad language of Section 2.5 included any legal malpractice claims Magic Valley may have had against a third party even if it was unknown at the time the Sale and Lease Agreement was executed or the closing documents were signed. *See Richter v. Analex Corporation*, 940 F. Supp. 353, 356 (D. C. 1996), which held "where one entity takes over the assets of another and there is a continuation in the same business, the new entity is a successor in interest and acquires *all* the predecessor's rights of action." The assignment language in *Richter* was less broad than the language contained in Section 2.5 of the Sale and Lease Agreement and was still held to be a valid assignment due to the nature of the acquiring party acting as a successor in interest.

The Idaho Supreme Court also rejected Defendants argument that because legal malpractice is a tort, it cannot be assigned. The Idaho Supreme Court held that a legal

malpractice claim is "an amalgam of tort and contract theories." *Id.* at 667, citing *Bishop v. Owens*, 272 P.3d 1247, 1251 (2012).

> It thus makes sense to treat St. Luke's as Magic Valley's successor, and not a stranger, when assessing the propriety of the assignment. Logically, given that St. Luke's assumed the obligations under the Suter litigation, it certainly should have the rights attendant to that assumption – which would include the right to recoup any malpractice losses that impacted the value of the consideration it received under the Agreement.

*Id.* at 667-668. The conclusion as a matter of law that St. Luke's stepped into the shoes of Magic Valley makes sense as St. Luke's was well aware of the status of Suter litigation and the alleged "emergency" regarding a defense expert when it negotiated the Sale and Lease Agreement and closed on such agreement. Moreover, St. Luke's was well aware Magic Valley had retained McDermott on January 30, 2006 to represent Magic Valley in the Suter litigation. Luciani's representation of Magic Valley was officially terminated in the Suter litigation when Ms. Olsson had been substituted in as counsel in such litigation in March 2006.

3. Damages Are Not Limited to Damages Actually Incurred by Magic Valley Prior to the Assignment

Defendants argue because Magic Valley did not incur any actual damages due to any alleged malpractice prior to the assignment, the case should be dismissed. The Court finds this argument regarding damages is misplaced. Because the Court finds as a matter of law that St. Luke's stepped into the shoes of Magic Valley, any alleged damages did not have to be incurred prior to the Sale and Lease Agreement being executed or closed. St. Luke's can seek damages proximately caused by the alleged legal malpractice by Luciani within the applicable statute of limitations. I.C. § 5-219(4).

4. The Action is Not Barred by Judicial Estoppel

Defendants argue the claims are barred by the concept of judicial estoppel as St. Luke's is making inconsistent legal arguments in this case as compared to the duty to defend claim against Truck. St. Luke's responds that it has consistently maintained that Luciani's

negligence included improper communications with the insurance company regarding coverage and other matters. Certainly, the client of the attorney hired by the insurance company was Magic Valley/St. Luke's, but the hired attorney in this situation normally makes status reports to the insurance company regarding the case. Whether the status reports Luciani made in this case also addressed attorney client communications or coverage issues beyond the scope of his employment is contested in this case.

Judicial estoppel is applicable to a party who takes a position that is contrary to its pleadings and positions in earlier proceedings. *See Brown v. Small*, 825 P.2d 1209, 1212 (Mont. 1992), *cited with approval* by *McKay v. Owens*, 937 P.2d 1222 (Idaho. 1997). St. Luke's maintains that it has consistently held that Luciani and Truck were acting in concert to provide a cheap and ineffective defense for the hospital. St. Luke's cites the Court to the alleged inappropriate correspondence or advice provided by Luciani to Truck and failure on the part of Truck and Luciani to retain an expert. The Court finds at this stage in the litigation, judicial estoppel based on the duty to defend litigation does not prevent St. Luke's from proceeding with its legal malpractice action.

5. Damages Recoverable in this Action

Defendants argue St. Luke's cannot prove any of the alleged damages were proximately caused by Luciani. Further, Defendants argue St. Luke's cannot recover for attorneys' fees associated with defending the Suter litigation or in bringing the duty to defend action against Truck. St. Luke's maintains the damages alleged (after offsets) are proximately caused by Luciani's alleged malpractice and that attorneys fees in the other related actions are proximately caused by Luciani's malpractice.

Proximate cause includes two factors: cause in fact (or actual cause) and legal responsibility. *Maria v. Marano*, 813 P.2d 350,352 (Idaho 1991). "Actual cause is the factual question of whether a particular event produce a particular consequence." *Newberry v. Martens*, 127 P.3d 187, 191 (Idaho 2005). " Where there are multiple causes of the harm, the plaintiff may recover if the defendant's negligence was a 'substantial factor' in causing

the injury." *Manning v. Twin Falls Clinic & Hospital, Inc.*, 830 P.2d 295, 299 (Idaho 1992). Legal cause exists when "it [is] reasonably foreseeable that such harm would flow from the negligent conduct." *Carmwer v. Slater*, 205 P.2d 1174, 1177 (Idaho 1975). A plaintiff must prove actual damage to recover under a theory of professional negligence. *McCall v. Buxton*, 201 P.3d 629 (Idaho 2009).

Generally, "[q]uestions of negligence and proximate cause are to be resolved by a jury." *Collins v. Collins*, 946 P.2d 1345, 1349 (Idaho Ct. App. 1997)(citations omitted). St. Luke's maintains proximate cause is a solely a jury determination. *See Cramer v. Slater*, 204 P.3d 508, 515 (Idaho 2009) ("Proximate cause is one of fact to be submitted to the jury and not a question of law for the court, if, upon all the facts and circumstances, there is a reasonable chance or likelihood of the conclusions of reasonable [people] differing, the question is one for the jury."). Luciani argues in legal malpractice claims, proximate cause is generally an issue for the court. *See McColm-Traska*, 88 P.3d 767 (Idaho 2004) (summary judgment granted in favor of attorney as plaintiff did not prove any damages related to the attorney's lack of memorializing a settlement agreement). The Court finds that Plaintiff has failed to establish by admissible evidence or genuine issues of material fact that certain damages are proximately caused in this action and that other damages must go to a jury for determination.

### A. Suter litigation settlement

As to the alleged damages related to the Suter litigation settlement of $4.25 million, the Court cannot determine how the final settlement four years *after* terminating the attorney could be proximately caused by Luciani's alleged malpractice regarding an emergency to retain a defense expert when an expert was retained and rebutted the plaintiff's expert calculations on false claim damages. St. Luke's argues in a footnote in its memorandum that the Suter litigation settlement "clearly could have been settled more advantageously and sooner but for Luciani's negligence, including among other things his failure to file a motion to dismiss, to prepare the Hospital's witnesses for deposition, and to proactively take

depositions and propound written discovery on the False Claims Act allegations." Dkt. 67, p.14, n4.   This conclusory statement that Magic Valley could have settled more advantageously or sooner does not appear to be based on Plaintiff's experts' opinions. Any opinion by the lead attorney for McDermott appears to be an undisclosed expert opinion that would not be admissible at trial, is based on factors not within the control of Luciani after he was terminated, and is purely speculative.

At the time the parties attended mediation in the Suter litigation in March of 2006, Magic Valley had their expert's report in hand contesting the $18 million false claims evaluation by Nicholson. In the Complaint in this matter, Dkt. 1, ¶ 9, St. Luke's states the emergency created by not retaining a defense expert exposed the hospital to $22 million in damages ($18 million in the false claims exposure and presumably $4 million in wrongful termination exposure). The hospital settled for $4.25 million.  Simply put, the case was complex before Luciani was terminated and remained complex after he was terminated. There is no evidence in the record to support St. Luke's argument that if a motion to dismiss was filed, it may have been granted.  Or if witnesses had been better prepared they could have settled the case for less money.  Clearly, dispositive motions prior to trial did not eliminate the false claims or wrongful termination allegations.  Therefore, the evidence to support a finding the settlement four years later was based on Luciani's alleged malpractice appears to the Court to be pure speculation. Like the plaintiff in *McColm-Traska*, 88 P.3d 767 (Idaho 2004), St. Luke's cannot prove it suffered harm in the litigation when it timely retained an expert and that expert filed a report.

B.  Attorneys' Fees to Litigate Duty to Defend Claim Against Truck

As to the damages for attorneys' fees to litigate the duty to defend against Truck, the Court finds these damages fail as a matter of law. The duty to defend was based on the insurance contract between Magic Valley and Truck.  Luciani was not a party to the insurance contract and there is no evidence that the decision of whether or not to pay for the defense Magic Valley wanted (a national law firm that had false claims act experience) for

the False Claims Act claims was made by Luciani. Because the decision to not pay was made by the insurance company, Luciani cannot be held legally responsible for that decision. *See McColm-Traska*, 88 P.3d 767 (Idaho 2004). Truck was paying for Luciani to defend the False Claims Act claims, so any decision not to continue to pay for legal representation under the duty to defend clause was the insurance company's not former counsel who was hired by the insurance company but terminated from the case.

As to Plaintiff's argument the failure to pay defense costs of the Suter litigation was a result of the "emergency" caused by Luciani's alleged malpractice, the Court finds even assuming Plaintiff could establish actual damages from the failure to retain an expert when an expert was ultimately timely retained, Plaintiff has failed to establish legal cause – that the failure to pay for defense counsel was a reasonably foreseeable harm that flowed from the alleged negligent conduct. *Cramwer v. Slater*, 204 P.3d 508, 515 (Idaho 2009). It may been foreseeable that another attorney would have to take over the case, but it was not foreseeable Truck would not be able to agree on a new attorney as they had done in the past when Mr. Luciani was hired when the hospital was dissatisfied with the first lawyer. It was not foreseeable that Truck would take the position it did not have a duty to defend the action it had previously been providing counsel for and the litigation was continuing. It was not foreseeable the hospital would decline Truck's offer to hire new counsel to represent the hospital at no expense to the hospital.

As to Plaintiff's argument the failure on the part of the insurance company to pay the hospital's attorneys' fees was a result of the alleged breach of loyalty by Luciani when he advised the insurance company coverage may not exist for the False Claims Act claims, this is speculation. There is no evidence before the Court that Luciani was hired to give Truck coverage advice or that the alleged advice given by Luciani to the insurance company was relied upon by Truck to deny representation. The sophisticated insurance company, not the attorney representing the insured, decides whether or not coverage or a duty to defend exists. In this case, the record before this Court shows that the insurance company had been paying the costs to defend the False Claims Act claims and any decision regarding the insurance

company's duty to defend occurred after Luciani was no longer involved in the case. The Court finds no reasonable jury would find the alleged malpractice and resulting termination of Luciani as counsel was a substantial factor in the insurance company determining its obligations under the duty to defend clause of the policy.

This Court is not going to re-litigate the duty to defend counterclaim. Luciani was not a party to that litigation and played no part in the settlement of that case. St. Luke's decided to settle the lawsuit instead of taking the matter to trial. If St. Luke's had gone to trial and been successful, it could have sought attorneys' fees related to the duty to defend litigation under Idaho law. Instead, St. Luke's seeks to bootstrap the duty to defend litigation costs to the legal malpractice action relating to the Suter litigation. The two actions are somewhat related, but the duty to defend litigation was not the legal responsibility of Luciani.

The facts before the Court do not support allowing St. Luke's to argue those attorney's fees should be recoverable in the legal malpractice claim against Luciani. The duty to defend litigation was not foreseeable or proximately caused by the alleged malpractice of Luciani. Therefore, St. Luke's will not be allowed to seek the $2.7 million it incurred in attorneys fees in litigation against Truck as damages in the this legal malpractice action.

C. Increased Attorneys' Fees to Defend Suter Litigation

Whether reliable evidence exists to support that actual damages related to the additional costs to defend the Suter litigation were proximately caused by Luciani's alleged malpractice is disputed in this case. The Court agrees with Defendants that the cost of an expert to audit the billings of the hospital would have been necessary to defend the action regardless of who was counsel for Magic Valley. Whether or not the expert costs were higher due to an audit having to be done on an expedited basis is unclear from the record before the court. Second, the reasonableness of the legal fees incurred by McDermott is disputed in this case. "As in any other negligence case, however, if there is a genuine issue of material fact about the reasonableness and care exercised by the attorney, then the issue must be submitted

ORDER - Page 15
13ORDERS\ST.LUKES_SJ.WPD

to the jury for determination." *Sun Valley Potatoes, Inc. v. Rosholt, Robertson & Tucker*, 981 P2d 236, 240 (Idaho 1999).  There is clearly a battle of the experts regarding whether Luciani committed malpractice and whether the fees charged by McDermott were reasonable or excessive. The Court agrees that just because St. Luke's paid McDermott's legal bills and the expert bills does not mean the bills were per se reasonable. These are questions for the finders of fact.

The Court understands that Magic Valley deemed it necessary to independently hire a national law firm instead of seeking a new attorney (paid by their insurance company) to be hired as they had previously done.  The question becomes was there actual harm from the alleged malpractice by Luciani.  Was the hiring of the national law firm by Magic Valley proximately caused by the Defendants' alleged malpractice and if so, at what point did such proximately caused damages end?  If Luciani was professionally negligent, did that lead to unreasonable fees being charged to which Luciani should not be held responsible.  Was the hiring of McDermott proper mitigation of the damages in this case of alleged legal malpractice? The fact that Magic Valley deemed a crisis or emergency to exist that threatened the well being of the hospital may or may not have been justification to circumvent their insurance carrier selecting an attorney for the defense. As Plaintiff's expert Irving Paul acknowledged in his deposition, it is uncommon, but an insured can be held responsible for some of the additional costs of independent counsel.

This is an interesting question. If the insurance company had a duty to defend, but the insured (Magic Valley) goes out an hires its own attorney (presumably at a much higher hourly rate than the insurance company would have paid for competent counsel) instead of giving the insurance company the opportunity to replace an attorney Magic Valley was not satisfied with, who bears the cost of the increased expenses for attorneys fees? What impact does the fact that St. Luke's apparently sued Truck and Travelers for the attorney and expert fees in the amount of $12 million and settled such claim for $8.25 million have on Luciani's alleged responsibility for the balance of $3.75 million. Was the hiring of the national law firm

proper mitigation of damages by the hospital when the insurance company offered to provide new counsel to defend the Suter litigation?

Plaintiff carries the burden on proving actual damages of approximately $3.75 million and that such damages were proximately caused by Luciani's alleged malpractice. Evidence of damages via a "case within a case" presentation is not required as the Idaho court did not adopt that standard in *Johnson v. Jones*, 652, P2d 650 (Idaho 1982). Nor is the court going to re-litigate the Suter or Truck litigation, both of which were settled and not tried. The Court will reserve its ruling on which specific damages will be allowed to be presented to the jury regarding the McDermott and expert fees incurred after Luciani was terminated.

## CONCLUSION

Viewing facts and all reasonable inferences to be drawn therefrom in the light most favorable to Plaintiff, there exist material issues of fact regarding the alleged legal malpractice, proximate causation for certain of the damages alleged and the reasonableness of the alleged damages. For these reasons, the summary judgment on these elements cannot be granted and must be decided by a jury as to the claim for approximately $3.75 million in attorneys fees and expert costs to defend the Suter litigation not previously recovered by St. Luke's.

## ORDER

**IT IS ORDERED:**

1. Defendants' Motion for Summary Judgement (Dkt. 53) is **GRANTED IN PART AND DENIED IN PART** consistent with this Order.

2. Defendants' Motion to Strike (Dkt. 70) is **DENIED** except as to the testimony of Mr. Hayman and hearsay related to whether or not the Suter litigation could have settled earlier and for less money.

3. Jury trial in this matter shall be set for **Tuesday, February 11, 2014 at 9:30 a.m** at the James McClure Federal Courthouse in Boise, Idaho. If the parties want to request a Magistrate Judge Settlement Conference, they should file a joint request with this Court to schedule a Settlement Conference with Judge Mikel H. Williams.

DATED: **September 30, 2013**

_____
Honorable Edward J. Lodge
U. S. District Judge